LAWNSMADE4U, LLC, DARREN
RICHARDS and LISA RICHARDS,

        **Plaintiffs,**

v.                                                 Case No:   6:18-cv-117-Orl-22GJK

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,
SECRETARY, UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY, ATTORNEY GENERAL
OF THE UNITED STATES,
DIRECTOR, UNITED STATES
CITIZENSHIP AND IMMIGRATION
SERVICES and DIRECTOR, UNITED
STATES CITIZENSHIP AND
IMMIGRATION SERVICES
CALIFORNIA SERVICE CENTER,

        **Defendants.**

## ORDER

This cause is before the Court on the parties' Cross-Motions for Summary Judgment. (Doc. 28; Doc. 31). Plaintiffs' filed Objections (Doc. 45) to the Magistrate Judge's Report and Recommendation ("R&R") (Doc. 42), wherein the Magistrate Judge recommended that Plaintiffs' Motion for Summary Judgment (Doc. 28) be denied (Doc. 42 at 13) and Defendants' Cross-Motion for Summary Judgment (Doc. 31) be granted. (Doc. 42 at 13). After an independent *de novo* review, for the reasons contained herein, Plaintiffs' objections are overruled, and the R & R will be adopted and confirmed.

# I. BACKGROUND[1]

In this case, Plaintiffs challenge the Defendant United States Citizenship and Immigration Services ("USCIS") denying Plaintiffs' request to extend their E-2 Treaty Investor visas. (Doc. 1). An E-2 visa permits a nonimmigrant alien who is developing and directing an enterprise of which he is an investor to seek admission to the United States. *See* 8 U.S.C. § 1101(a)(15)(E)(ii). Once an alien obtains this classification, a derivative E-2 visa may also be issued to the alien's spouse and children. *See* 8 U.S.C. § 1101(a)(15)(E); 8 C.F.R. § 214.2(e)(4); 22 C.F.R. § 41.51(b)(3). "E–2 visas are coveted because they allow investors to reside in the United States for longer than other visas; even better, they are indefinitely renewable." *Tocara Investments v. Johnson*, No. 2:15-CV-00787-JAD-PAL, 2017 WL 985644, at *1 (D. Nev. Mar. 14, 2017) (footnotes omitted).

Plaintiffs Darren Richards ("Richards") and his wife Lisa Richards ("Lisa Richards") (collectively "the Richards") are United Kingdom citizens who live in Kissimmee and own Plaintiff LawnsMade4U, LLC ("LM4U"). (Doc. 1 at 3). LM4U is a for-profit lawncare and landscaping company. (Doc. 28 at 18). Richards is the sole employee of LM4U and he performs all the landscaping services offered by LM4U. (*Id.*) The Richards each own 50% of LM4U. (Doc. 1 at 3).

On or about January 29, 2014, Richards received an E-2 visa based on his initial investment in LM4U, the visa was valid through January 27, 2016. (Doc. 1 at 4; R. 314). Lisa Richards and the parties' children were afforded E-2 dependent status based on Richards' investment. (Doc. 1 at 4). In Richards' initial application for E-2 treaty investor status, he projected hiring employees at certain levels of revenue attainment over his first two years as a treaty investor. (R. 476–78). In his business plan, he stated that he intended to hire one additional full time employee after his first

---

[1] The material facts are derived from the Magistrate Judge's R&R as neither party objected to the facts stated in the R&R nor do the parties argue that there exists a material issue of fact. Instead, the parties dispute the appropriate interpretation of the relevant regulation and statute.

year and two more by the end of his second year to start a second team. (R. 477). The USCIS approved his application even though Richards would initially be the only employee of the enterprise. (R. 314 & 476–78).

On November 17, 2015, the Richards sought to extend their E-2 status with the USCIS (Doc. 1 at 4; R. 251–313). LM4U filed a Petition for Nonimmigrant Worker (I-129) for Richards, and Lisa Richards filed an Application to Extend/Change Nonimmigrant Status (I-539) on behalf of herself and the Richards' children as dependents. (Doc. 28 at 2).

The Richards' request was denied on May 9, 2016. (Doc. 1 at 5; R. 23–25 & 27–28). The USCIS denied the request because it deemed LM4U a marginal enterprise and because Richards was not solely directing and developing LM4U. (Doc. 1 at 5; R. 24–25). On October 17, 2016, after Plaintiffs submitted additional evidence, the USCIS denied the request but only on the basis that Richards was not solely developing and directing LM4U. (Doc. 1 at 5; R. 21–22). In its decision, the USCIS found that:

> [T]he applicant provides a new breakdown of the applicant's duties:60% of time spent on actual landscaping work (cutting grass and maintaining yards); 20% updating the website and social media for marketing purpose; 10% networking with potential customers and 10% administrative work. The applicant intends to hire a new part-time employee to do the landscaping to reduce the applicant's 60% allocation so the applicant will have more time for networking and marketing for new contracts.
>
> The applicant was granted treaty investor status in January 2014 so that he could direct and develop the investment enterprise but thirty months later, at the time of the filing of this motion, the applicant is still the sole employee of the enterprise. As such, the applicant is prov[id]ing landscaping skills to earn a living and he has not established that he is directing and developing the investment enterprise.

(R. 22). Therefore, the USCIS noted Richards is still the sole employee, that he spends 60% of his time acting as the sole laborer for LM4U, and thus, found he had not established he is directing and developing the enterprise. (*Id.*)

On May 31, 2017, after Plaintiffs filed a second motion to reopen and submitted additional evidence that Richards controlled 50% of LM4U, the USCIS again denied the motion and

maintained its finding that Richards did not develop and direct LM4U as required by federal regulations. (R. 2–3 & 16–20). The USCIS found that: "The applicant is in the capacity to direct and develop the enterprise based on his 100% ownership of the enterprise. However, since he is the sole employee of the enterprise two years after the commencement of the lawn care and landscaping services, it is found that the investor has been providing lawn care and landscaping services himself." (R. 2). The USCIS also found that the "investor is found to be providing unskilled labor in direct competition with other local providers of lawn care and landscaping services; he is not directing and developing the investment enterprise as required." (R. 3).

On January 23, 2018, Plaintiffs filed their Complaint, seeking declaratory and injunctive relief. (Doc. 1). On August 23, 2018, Plaintiffs filed their Motion for Summary Judgment, primarily arguing that Richards was entitled to an E-2 Treaty Investor visa based on his 50% ownership in LM4U pursuant to 8 C.F.R. § 214.2(e)(16). (Doc. 28).[2] On October 9, 2018, Defendants filed their Opposition and Cross-Motion for Summary Judgment, arguing that Richards' 50% ownership by itself was insufficient to demonstrate that Richards "directs and develops" LM4U as required under 8 C.F.R. § 214.2(e)(16). (Doc. 31). On March 6, 2019, the Magistrate Judge issued the R&R recommending that the Court deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.[3] (Doc. 42). On April 3, 2019, Plaintiffs filed Objections to the R&R (Doc. 45), and, on April 24, 2019, Defendants filed their Response. (Doc. 48).

---

[2] At summary judgment, Plaintiffs asserted that "[t]he sole issue before the Court is whether Plaintiffs satisfy the develop and direct requirement of 8 C.F.R. § 214.2(e)(16)." (Doc. 28 at 4).

[3] Due to the government shutdown earlier this year, this case was stayed and administratively closed from January 7, 2019, to February 6, 2019. (Doc. 38).

## II. LEGAL STANDARDS

This case requires the Court to apply a combination of legal standards as it involves cross-motions for summary judgment, review of an agency's decision, and an examination of a magistrate judge's report and recommendation.

### A. Summary Judgment

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The present case is suitable for summary judgment as the parties do not dispute the material facts and the Court's review is limited to the administrative record before the agency. *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1253 (11th Cir. 2007) ("Summary Judgment is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency.") (citations omitted).

### B. Review of Magistrate Judge's Report & Recommendation

District courts review *de novo* any portion of a magistrate judge's disposition of a dispositive motion to which a party has properly objected. Fed. R. Civ. P. 72(b)(3); *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 n.3 (11th Cir. 2011) (per curiam)[4]. The district judge may reject, modify, or accept in whole or in part the magistrate judge's recommended disposition, among other options. Fed. R. Civ. P. 72(b)(3). *De novo* review of a magistrate judge's findings of fact must be "independent and based upon the record before the court." *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988). The district court "need only satisfy itself that there is no clear error on the face of the record" in order to affirm a portion of the Magistrate Judge's

---

[4] Unpublished opinions of the Eleventh Circuit constitute persuasive, not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

recommendation to which there is no timely objection. Fed. R. Civ. P. 72 advisory committee's note (1983) (citations omitted); *see also Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993).

**C. Review of USCIS Decision**

Under the Administrative Procedure Act ( "APA"), 5 U.S.C. § 701 *et seq.*, agency actions, findings, and conclusions can be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). The Eleventh Circuit has stated that this standard is "exceedingly deferential." *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996). "[T]he arbitrary and capricious standard gives an appellate court the least latitude in finding grounds for reversal," and administrative decisions "should be set aside in this context . . . only for substantial procedural or substantive reasons as mandated by statute, . . . not simply because the court is unhappy with the result reached." *N. Buckhead Civic Ass'n. v. Skinner*, 903 F.2d 1533, 1538–39 (11th Cir. 1990) (footnotes omitted). Moreover, the "focal point for judicial review of an administrative agency's action should be the administrative record." *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs.*, 87 F.3d 1242, 1246 (11th Cir. 1996) (citation omitted). The reviewing court does not "conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Id.* (citation omitted). Instead, the court is "to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Id.* (citation omitted).

**III. DISCUSSION**

After an independent *de novo* review of the record in this matter, including the objections filed by Defendants, and Plaintiffs' Response to said objections, the Court agrees entirely with the findings of fact and conclusions of law in the Magistrate Judge's R&R.

### A. Applicable Law

To qualify for an E-2 Treaty Investor visa, a nonimmigrant must be entering the United States "*solely to develop and direct* the operations of an enterprise in which he has invested . . . a substantial amount of capital." 8 U.S.C. § 1101(a)(15)(E)(ii) (emphasis added). The 'E–2 Treaty Investor' visa classification was established by Congress in order to encourage capital inflow by foreign investors and to create additional employment opportunities for United States citizens." *All Bright Sanitation of Colorado, Inc. v. U.S. Citizenship & Immigration Servs.*, No. 10-CV-21808-SCOLA, 2012 WL 3962900, at *1 (S.D. Fla. Sept. 11, 2012). A nonimmigrant must "[i]ntend to depart the United States upon the expiration or termination of treaty trader (E–2) status." 8 C.F.R. § 214.2(e)(2)(iii).

A nonimmigrant seeking an E-2 Treaty Investor visa may apply to the USCIS or the Department of State ("DOS"). *See* Leslie K. L. Thiele & Scott T. Decker, *Residence in the United States Through Investment: Reality or Chimera?*, 3 Alb. Gov't L. Rev. 103, 108 (2010) ("Unlike other nonimmigrant visas, the USCIS shares responsibility for the issuance of E visas with the DOS."). In this case, Plaintiffs applied to the USCIS to extend their visas. A party seeking an E-2 visa through the USCIS must satisfy the agency's implementing regulations, including 8 C.F.R. § 214.2(e). The regulation at issue, 8 C.F.R. § 214.2(e)(16), states:

> Solely to develop and direct. An alien seeking classification as a treaty investor (or, in the case of an employee of a treaty investor, the owner of the treaty enterprise) *must demonstrate that he or she does or will develop and direct the investment enterprise. Such an applicant must establish that he or she controls the enterprise by demonstrating ownership of at least 50 percent of the enterprise*, by possessing operational control through a managerial position or other corporate device, or by other means.

8 C.F.R. § 214.2(e)(16) (emphasis added). Moreover, the preamble to the USCIS regulations states:

> [I]t should be noted that, because of the requirement that a treaty investor be entering "solely to develop and direct" the operations of an enterprise, an alien who

is seeking admission in order to engage primarily in skilled or unskilled labor will be ineligible for E nonimmigrant visa classification. Such an investor may, however, perform "hands on" duties, provided they are purely incidental to his or her developing and directing the operations of the enterprise.

60. Fed. Reg. 48138, 48144 (Sept. 12, 1997).[5] As the preamble alludes to, a party seeking an E-2 visa "may perform some menial tasks without negating his treaty investor status if he primarily acts to direct, manage, and protect his investment." *Lauvik v. I.N.S.*, 910 F.2d 658, 661 (9th Cir. 1990) (citations omitted). "A treaty investor competes with other entrepreneurs to sell goods and services, but he does not compete directly in the market as a skilled or unskilled laborer. *Id.* (citations and internal quotation marks omitted). "An alien who asserts that he qualifies for nonimmigrant status as a 'treaty investor' has the burden of establishing his claim. His proof must be unambiguous and doubts should be resolved against the investor claimant." *Kun Young Kim v. Dist. Dir., INS*, 586 F.2d 713, 716 (9th Cir. 1978) (citation omitted).

**B. The R&R**

Applying the principles stated above, the Magistrate Judge found that while Richards had the requisite control over LM4U with his 50% ownership, he failed to establish that he was primarily managing, developing, or directing the enterprise more than two years into his endeavor. (Doc. 42 at 13). Therefore, the Magistrate Judge recommended denying Plaintiffs' Motion for Summary Judgment and granting Defendants' Cross-Motion for Summary Judgment. (*Id.*) In reaching his decision, the Magistrate Judge solely focused on the determinative issue of "whether

---

[5] Likewise, the DOS Foreign Affairs Manual ("FAM") states 402.9-6(F)(a) states:
> In all treaty investor cases, *it must be shown that nationals of a treaty country own at least 50% of an enterprise. It must also be shown, in accordance with INA 101(a)(15)(E)(ii) that a national (or nationals) of the treaty country, through ownership or by other means, develops and directs the activities of this enterprise*. The type of enterprise being sought will determine how this requirement is applied.

Richards' ownership of 50% of LM4U, in and of itself, is sufficient to satisfy the 'develop and direct' requirement of 8 C.F.R. § 214.2(e)(16), and ultimately, 8 U.S.C. § 1101(a)(15)(E)(ii)." (*Id.* at 10). The Magistrate Judge reasoned that a party seeking E-2 treaty investor status must demonstrate more than control of an enterprise to establish entitlement to an E-2 Treaty Investor visa. (*Id.*) He explained that while control through ownership demonstrates *the capacity* to develop and direct an enterprise, it does not satisfy the "develop and direct" requirement of 8 U.S.C. § 1101(a)(15)(E)(ii). (*Id.*) (citing *United States v. Matsumaru*, 244 F.3d 1092, 1100 (9th Cir. 2001)). The Magistrate Judge emphasized that the statute requires that a nonimmigrant alien seek to enter the United States "solely to develop and direct the operations of an enterprise." (Doc. 42 at 10). He stated that to demonstrate this intention, the USCIS and DOS regulations require a potential E-2 treaty investor to show that he or she has the capacity to develop and direct by demonstrating control, and then demonstrate he or she is in fact developing and directing the enterprise. (*Id.*) The Magistrate Judge determined that to read 8 C.F.R. § 214.2(e)(16) to only require control or ownership, as Plaintiffs argue, would contradict the language and intent of the USCIS and DOS regulations, the statute, and case law which establishes that an E-2 treaty investor must primarily act to direct, manage, and protect his investment. (*Id.* at 10–11) (citing *Lauvik v. I.N.S.*, 910 F.2d 658 (9th Cir. 1990)).

Next, the Magistrate Judge shifted his attention to *Lauvik v. I.N.S.*, 910 F.2d 658 (9th Cir. 1990), finding it to be instructive and persuasive. (Doc. 42 at 11). In *Lauvik*, the plaintiff was granted an E-2 visa based on his investment in a motel/trailer park. *Lauvik*, 910 F.2d at 659. On an application to extend his visa, the plaintiff described his duties as "manage and do all work and repairs, rent rooms and trailer spaces, yard work, plombing [sic], etc." *Id*. The INS denied his application partly because it found that his "duties gave him the status of a skilled or unskilled laborer rather than that of a treaty investor." *Id.* However, the Ninth Circuit held that INS abused

its discretion in denying the plaintiff's extension request based on the INS "not considering all relevant factors and assuming that all skilled and unskilled labor is inconsistent with treaty investor status." *Id.* at 662. The court reasoned that the plaintiff could "perform some menial tasks without negating his treaty investor status if he primarily acts to direct, manage, and protect his investment." *Id.* at 661 (citations omitted). The court focused on whether the plaintiff was competing with other entrepreneurs to sell goods and services, which treaty investors are allowed to do, or competing directly in the market as a skilled or unskilled laborer, which treaty investors are not allowed to do. *Id.* (citations omitted). To answer this question, the court emphasized that the plaintiff did not invest over $250,000 in his business to "take a skilled or unskilled job away from an American citizen." *Id.* at 662. In comparing the plaintiff's situation with other cases, the court concluded "that [plaintiff] [was] far more like the motel owner in *Bhakta* who competes with other entrepreneurs for the sale of rooms, than he is like the chef in *Udagawa* who takes jobs away from American citizens or the dry cleaner in *Ruangswang* who is paid for her labor." *Id.*

The Magistrate Judge derived a framework from *Lauvik* with "management, direction and development at one end of the spectrum where treaty investor status is established and primarily providing labor at the other end of the spectrum which negates such status." (Doc. 42 at 12). The Magistrate Judge found that Richards is on the latter end of the spectrum. (*Id.* at 12–13). He highlighted that in Richards' initial E-2 visa application, he projected hiring employees at certain levels of revenue attainment over his two years as a treaty investor. (*Id.* at 12). "However, entering his third year, and despite reaching the revenue goals he set, Richards has not hired any employees and he continues to perform 100% of the labor for his enterprise." (*Id.* at 13). The Magistrate Judge stated that Richards' providing landscaping and lawn care services is not incidental to his direction, development, and management of LM4U pursuant to *Lauvik*, but instead is Richards earning a

living. (*Id.*) Thus, he concluded that the USCIS did not abuse its discretion in denying the request to extend the Richards' E-2 visas. (*Id.*)

**B. Plaintiffs' Objections**

Plaintiffs' objected to the R&R. (Doc. 45). The Magistrate Judge provided a well-reasoned analysis of the E-2 visa issue raised in the parties' motions. For this reason, the undersigned Judge will adopt and confirm the R&R. Nonetheless, the undersigned Judge will address Plaintiffs' objections.

Plaintiffs' chief objection is that Richards is entitled to an E-2 visa based solely on his 50% ownership or control in LM4U pursuant to 8 C.F.R. § 214.2(e)(6).[6] (Doc. 45 at 4–15). The Court agrees with the Magistrate Judge that Plaintiffs' view contradicts the language and intent of the regulations, statute, and case law. (Doc. 42 at 10–11). Notably, Plaintiffs focus their analysis solely on the regulation and not the Treaty Investor statute. Pursuant to the Treaty Investor statute, to qualify for an E-2 Treaty Investor visa, a nonimmigrant must be entering the United States "*solely to develop and direct* the operations of an enterprise in which he has invested . . . a substantial amount of capital." 8 U.S.C. § 1101(a)(15)(E)(ii) (emphasis added). While Richards' ownership or control gives him the capacity to develop and direct the operations of LM4U, it does not standing alone demonstrate that he is actually developing and directing the operations of LM4U. *Han v. Hendricks*, 949 F.2d 399 (9th Cir. 1991) ("To qualify as a treaty investor, a person must "develop and direct the operations of an enterprise in which he has invested, or of an enterprise in which he is actively in the process of investing, a substantial amount of capital.") (citation and internal quotation marks omitted); 9 FAM 402.9-6(F) ("In all treaty investor cases, it must be shown that

---

[6]Plaintiffs argue that the Court owes no deference to the USCIS' interpretation of the regulation because the regulation is unambiguous. (Doc. 45 at 7). Assuming *arguendo* that the Court gives no deference to the USCIS' interpretation, the Court would reach the same conclusion that Richards' 50% ownership of LM4U standing alone does not entitle Richards to treaty investor status.

nationals of a treaty country own at least 50% of an enterprise. It must also be shown, in accordance with INA 101(a)(15)(E)(ii) that a national (or nationals) of the treaty country, through ownership or by other means, develops and directs the activities of this enterprise."). Plaintiffs' interpretation 8 C.F.R. § 214.2(e)(6) contradicts the Treaty Investor statute's plain language. "[W]here a regulation conflicts with a statute, the statute controls. . . ." *United States v. Marte*, 356 F.3d 1336, 1341 (11th Cir. 2004). Further, Plaintiffs also implicitly admit that their interpretation contradicts the purpose of the Treaty Investor statute by stating "[a]s noted by Magistrate Judge Kelly, awarding treaty investor visa status exclusively on majority would in some cases, contravene the purpose behind the treaty investor visa statute." (Doc 45 at 12). "A regulation can *only* be effective to promote the purpose of the statute . . . ." *Yiu Tsang Cheung v. Dist. Dir., INS* , 641 F.2d 666, 669 (9th Cir. 1980) (emphasis added) (citation omitted). As stated *supra*, "[t]he 'E–2 Treaty Investor' visa classification was established by Congress in order to encourage capital inflow by foreign investors and to create additional employment opportunities for United States citizens." *All Bright Sanitation,* 2012 WL 3962900, at *1. Under Plaintiffs' interpretation of the regulation, a nonimmigrant would be entitled to an E-2 visa based solely on majority ownership or control despite performing 100% of his enterprise's labor for years and competing with American laborers, as in this case. *See United States v. Matsumaru*, 244 F.3d 1092, 1100 (9th Cir. 2001) ("[I]n some cases, majority ownership will not satisfy the 'develop and direct' requirement of the statute. . . . The decision whether to grant a foreign citizen's petition for a treaty investor visa is a complex, fact-specific inquiry requiring experience, expertise, and the exercise of policy judgment.").

Plaintiffs attempt to undermine the Magistrate Judge's R&R by emphasizing that it relied almost exclusively on cases that predated the regulation at issue. (Doc. 45 at 10). However, *Lauvik*, the main case relied on in the R&R, interpreted what it meant to be a treaty investor under the

Treaty Investor statute. *Lauvik* sets out a useful framework to determine whether an investor's labor is inconsistent with his treaty investor status. Given the undisputed facts, the Court finds that Richards' providing 100% of LM4U's labor years after the enterprise was established is inconsistent with his treaty investor status. As stated by the Magistrate Judge, "Richards' provision of landscaping and lawn care services are not incidental to his direction, development and management of LM4U as contemplated by *Lauvik*. . . ." (Doc. 42 at 13). Despite his initial representation to the USCIS that he would have hired three employees by the end of LM4U's second year in business, when the time came he was *still* LM4U's only employee and performed 100% of the labor. At this point, he was not competing with other entrepreneurs to sell goods and services, but was competing directly in the market as a laborer and earning a living, which clearly undermines the Treaty Investor statute.[7]

Plaintiffs also argue that the USCIS' denial was based on a multi-employee requirement that is not required under the regulation. (Doc. 45 at 6 & 10–12). However as stated in a footnote in the R&R, "[t]he [USCIS] decision . . . was based on Richards' endeavors, and the court sees nothing indicating a multi-employee requirement was imposed. While the decision mentions Richards is the only employee of LM4U and that he performs all of the labor for LM4U, those factual statements were observations made in the context of evaluating whether Richards met his burden to establish he met the requirement of solely directing and developing the enterprise." (Doc. 42 at 13 n.9). In addition, Richards introduced employees into the equation by initially representing to the USCIS that he would hire a certain number of employees in the future, which he failed to do.

---

[7]These facts also bolster the point that applicants must actually develop and direct the enterprise in order to receive an E-2 visa and the capacity to develop and direct, standing alone, is insufficient. If majority control and ownership were sufficient to satisfy the regulation and Treaty Investor statute, then nonimmigrants could continually renew their E-2 visas without providing additional job opportunities for American citizens and compete against American laborers.

Plaintiffs also take issue with the Magistrate Judge finding that in order to satisfy the develop and direct requirement an E-2 investor must be *primarily* engaged in developing and directing the business enterprise because the regulation contains no such requirement. (Doc. 45 at 14). However, the Magistrate Judge's use of primarily is taken from *Lauvik*, which this Court cites with approval.

Plaintiffs also argue that USCIS erroneously relied upon the preamble to the regulation. (Doc. 42 at 15–20). Plaintiffs assert that the preamble conflicts with the regulation because the regulation does not impose a multi-employee requirement. (Doc. 45 at 15–22). However, as discussed *supra*, the USCIS did not impose a multi-employee requirement on Plaintiffs. Therefore, the Court overrules all of Plaintiffs' objections and agrees with the USCIS' denial and with the findings of fact and conclusions of law in the Magistrate Judge's R&R.

## IV. CONCLUSION

Based on the foregoing, it is ordered as follows:

1. Plaintiffs' Objections (Doc. 45) filed on April 3, 2019 are **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation (Doc. 42), issued March 6, 2019, is **ADOPTED and CONFIRMED** and made a part of this Order.

3. Defendants' Cross-Motion for Summary Judgment (Doc. 31), filed October 9, 2018, is **GRANTED**.

4. Plaintiffs' Motion for Summary Judgment (Doc. 28), filed August 23, 2018, is **DENIED**.

5. The Clerk is **DIRECTED** to enter judgment for the Defendants and to close this case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on June 4, 2019.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record